Where letters of guardianship of an infant ten months old have been granted ex parte on an application stating that the best interests of the infant demand the immediate appointment of the petitioner, they are subject to revocation on the application of other relatives.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 25, Guardian and Ward, § 71.]

2. SAME.

The father of a child ten months old was taken sick at about the time of his wife's death, and he delivered the child to the custody of its paternal grandparents, and died within a month thereafter. Letters of guardianship were granted to an aunt, who, though a Roman Catholic, as were also the child's parents, was married to an Episcopalian by a clergyman not of her own faith. She appeared, on motion to revoke the appointment, to be narrow-minded, quick-tempered, and obstinate. The grandparents were respectable people, competent to bring up their said grandchild. Held, that the appointment would be revoked, and the child committed to the custody of the grandparents.

In the matter of the guardianship of William Crickard, an infant. Application to revoke letters of guardianship granted.

Thomas J. Nigham (John M. Murphy, of counsel), for petitioners. C. D. Kiehel, for respondent. Richard E. White, special guardian.

BROWN, S. This is an application for the revocation of letters of guardianship. Heretofore, and on or about the 23d day of April, 1906, one Alice Fitzgerald made an ex parte application to this court for the appointment of a guardian of the person and property of William Crickard, an infant, then of the age of ten months or thereabouts. Upon presentation of said petition by the attorney for the petitioner therein, the surrogate called attention to the issuing of a citation to call in the other relatives of the infant, and was assured by said attorney that the best interests of the infant would be subserved by the immediate appointment of the said Alice Fitzgerald, the petitioner, who was an aunt of said infant; and, after the attorney for the petitioner had been informed by the surrogate that, if such appointment should be made, it would be subject to a hearing for a revocation in case the other relatives should apply, the court issued letters of guardianship upon the person and property of the said infant to the said Alice Fitzgerald, upon her filing her oath and bond therein. Subsequent thereto an application was made to this court for the revocation of said letters; the petition being made by Patrick Crickard, grandfather of said infant, in whose possession said infant was at the time of the original appointment, and still is. Upon said application a citation was issued and several hearings were had; the grandfather and the guardian, Alice Fitzgerald (now, by marriage since said appointment, Alice Fitzgerald Tillotson), both appearing by counsel, and Richard E. White,

Esq., having been appointed by the court special guardian for said infant, appearing as such special guardian.

From the fact that the original appointment was made ex parte, the court regards this hearing in the same light as though a citation had been originally issued and the hearing had before any appointment had been made. It appears that Mary Crickard, the mother of William Crickard, the infant, died in the city of Rochester on March 27, 1906, leaving, her surviving, her husband, William Crickard, and the infant in question, then past nine months old. The father was taken sick at or about the time of the death of his wife, and during his sickness he delivered the infant to his father, Patrick Crickard, and his wife, Elizabeth Crickard, the grandparents of said infant, and requested them to care for the child, promising to pay them well for so doing; and thereupon they took the child with them into their care and custody. It does not appear whether the father thought at that time that he would not survive his sickness. The father died in the city of Rochester on April 20, 1906. Both parents died of diphtheria. It appears that the present guardian, although a resident of the county of Monroe at the time of her appointment, and unmarried, has since married, and that her husband was at the time of said marriage engaged in business at Meriden, Conn.; and she testified, after her appointment, in a proceeding brought in the Supreme Court to recover the custody of the child, that she was then expecting to go to Meriden, Conn., to live. Since that, on the hearing herein, she has testified that her husband's home is in Lyons, N. Y., and that he was contemplating coming back to Rochester or Lyons. This question, from the evidence before the court, resolves itself into this: that Alice Fitzgerald Tillotson cannot be regarded as a permanent resident of this state. As far as any competent evidence herein is concerned, her husband is presumed to be a resident of the state of Connecticut, and her residence followed that of her husband upon her marriage to him; and, while it may be that he has not become a resident of the state of Connecticut, her residence is not assuredly fixed in this state.

From the evidence, and the manner and conduct of the guardian upon the witness stand, although apparently a woman of good intentions, she appears to be narrow-minded, quick-tempered, and obstinate, which, with her past surroundings and environments, renders her less capable or desirable as a person to take charge of said infant than she appeared to the surrogate upon the original ex parte application for her appointment. The parents of the infant were both Roman Catholics. The grandparents are Roman Catholics. While Mrs. Tillotson is a Roman Catholic, she has recently married an Episcopalian, and was married by a clergyman outside the pale of the Roman Catholic Church. This point has been urged very strenuously by the counsel requesting the revocation of the letters heretofore issued, and, it seems to the court, with good reason. It is refreshing in these days of iconoclasm to find people to whom their religion is of some vital moment, who earnestly believe that their children should be brought up in their religion; and we consider that it is the duty of the courts, as far as it consistently can be done, to see to it that guardians who

have charge of the custody of infants should be of the same religion
as the deceased parents, and should be earnest in leading said infants
to follow the religion of their deceased parents. No exception can
be taken by the court to Alice Fitzgerald marrying an Episcopalian.
That was her privilege and her right; but the fact that she has done
so, and that she was married by a clergyman outside of the church of
her childhood, shows a laxity in conforming to the regulations of her
church; and an infant brought up by her in the association of her
husband, no matter how good a man he is (the better and the more
earnest he is for his own faith the greater would his influence be in
turning a young child to view religion from his point of view), would
naturally be influenced thereby.

From a religious point of view, we think that the contention of the
grandfather that the letters should be revoked as to the person is
sound, for the general welfare of the infant. The grandparents
appear to be reputable people, living at or near a country village, upon
a small farm. They have brought up a family of children, and they ap-
pear competent and capable of properly bringing up their grandchild.
There is evidence in the case that the mother requested that her sister,
Alice Fitzgerald, who was godmother of the infant, should take care
of the child in case anything happened to her; but there was also evi-
dence of the mother's making remarks to people which show her doubt
as to her said sister being a capable person to care for such child. But
the death of the father, subsequent to the mother, and the request of
the father that his parents, the grandparents of the infant, should take
the child, and the fact that they are, as next of kin, nearer the infant
than the aunt, leads me to believe that the grandparents are entitled to
the child rather than the aunt. There is no question in my mind but
that the guardian of the person should be removed.

As to whether the guardian of the property should be removed has
been a more serious question to decide; but, under the authority of
Matter of Feely, reported in 4 Redf. Sur. 306, and Bolling v. Coughlin,
5 Redf. Sur. 116, and the inherent powers of a surrogate's court over
its own decrees, I held that the court has power, where an appoint-
ment is made ex parte and application is afterwards made to revoke,
and upon the hearing the evidence produced before the court convinces
the court that the order granted ex parte and letters issued thereupon
were granted and issued improvidently, and that in the judgment of
the court, had the evidence been before him at the time of the grant-
ing of the order ex parte that afterwards was before him, the court
would have taken different action, and that the court has the right to
revoke said order and letters issued thereon, both as to the person and
property, or either. In the case before us the court is frank in saying
that, had the evidence which has been produced before him on the
hearing on the application for revocation been before him on the orig-
onal ex parte application, he would not have issued the letters of
guardianship of either the person or property to the said Alice Fitz-
gerald, and he accordingly holds that said order was improvidently
granted. By making this statement and holding the court blames
himself, and does not reflect in the least upon the statements or the

integrity of Alice Fitzgerald or her attorney on making the original application. The statements that were made to the court by the counsel for the guardian that was then appointed were made in good faith; but they simply presented an ex parte presentation of the matter, and the attorney did not know all of the facts which the court has since learned upon the hearings herein. The court being satisfied that an error was made by not in the beginning giving the grandparents or relatives of the infant on the father's side of the house an opportunity to be heard, the court accordingly failed to get a full understanding of the case, as it has since been proven to him.

An additional reason for changing the guardian of the property is that both the present guardian and the grandfather and grandmother testified in court that, in case of their respective appointments as guardian of the person, they were willing that the Rochester Trust & Safe Deposit Company should be appointed guardian of the property; and, by such an appointment being made, the expense of a bond for many years for a guardian before said infant becomes of age can be saved for the benefit of said infant.

Accordingly, I hold: First, that the general welfare of the infant, William Crickard, will be best promoted by the appointment of some other person than the present guardian as guardian of the person of the said William Crickard; second, that the letters of guardianship as to the person of the said William Crickard, heretofore issued to Alice Fitzgerald, should be revoked; third, that, considering the uncertainty of the permanent residence of the present guardian, and of the fact of her having been appointed upon an ex parte application, and upon the proofs submitted herein, showing the existence of a state of facts which were not fully understood by the surrogate at the time of the issuing of the original letters herein, the letters of guardianship as to the property issued herein to the said Alice Fitzgerald, should be revoked.

Accordingly, I direct: First, that the letters of guardianship, both as to the person and property of William Crickard, an infant, issued herein to Alice Fitzgerald on or about the 20th day of April, 1906, be revoked, and that she be removed as such guardian of the personal property of the said William Crickard, and that the order entered herein so appointing her be revoked; second, that Patrick Crickard, grandfather of said infant, and Elizabeth Crickard, his wife, be nominated and appointed by the surrogate as guardians of the person of the said William Crickard, upon their filing their oath of office and a bond in the sum of $500, approved by this court, for the faithful performance of their duties as such guardians; third, that the Rochester Trust & Safe Deposit Company be nominated and appointed guardian of the property of the said William Crickard, upon their filing a consent to accept such appointment and filing the usual oath of office.

Let findings and an order be drawn according to the above decision, without costs to either party against the other, except such allowance as may be made to the special guardian upon application made by him, which may either be incorporated in the order entered herein or in a subsequent order, as he may be advised, and except the actual dis-

bursements of the said Alice Fitzgerald for her bond as such guardian of the person and property of said infant as may be approved and allowed by the surrogate, upon order hereinafter made upon application therefor.

Decreed accordingly